## City of Chicago v. Anna Bush.

### Gen. No. 10,878.

1. CAUSE OF INJURY—*by whom to be determined.* The cause of personal injuries, where the evidence is conflicting, is a question for the jury.

2. VERDICT—*when not excessive.* A verdict for $7,500 is not excessive where it appears that the plaintiff, a woman, sustained a permanent injury to her wrist, a bruise upon her head, and lameness, and a reduction of earning power from $1.25 or $1.50 per day to twenty-five or fifty cents per day, followed later by paralysis in the right side of her body, the loss of the use of the right arm and leg and an impairment of her speech, all probably of a permanent nature.

3. MEASURE OF DAMAGES—*when instruction as to, in personal injury case, while erroneous, does not constitute reversible error.* An instruc-

tion which tells the jury that if they find for the plaintiff then " in assessing her damages they should assess such an amount as they may believe from all the evidence and under the court she is entitled to," is erroneous in that it allows the jury to award such damages as, from the evidence, they believe the plaintiff was entitled to, and not simply such as she sustained: but held, in this case, in view of all the circumstances, that the giving of such instruction did not constitute reversible error.

Action for personal injuries. Appeal from the Superior Court of Cook County; the Hon. SAMUEL C. STOUGH. Judge. presiding. Heard in the Branch Appellate Court at the October term, 1902. Affirmed. Opinion filed January 19, 1904.

JOHN E. OWENS, City Attorney, for appellant; WILLIAM J. STAPLETON, of counsel.

W. S. JOHNSON, for appellee.

MR. JUSTICE STEIN delivered the opinion of the court.

Appellee recovered a judgment of $7,500 against appellant for injuries received by her from falling upon a defective sidewalk. There is no question as to appellant's liability, the, main controversy being whether the damages are excessive.

About 6:30 P. M. on March 29, 1901, appellee, a woman thirty-nine or forty years of age, tripped on a broken board of the sidewalk and fell, sustaining a fracture of the right wrist and a bruise on the left side of her head. She was assisted to arise and escorted home part of the way. The same night she was taken to the County Hospital, from which she was discharged at the end of two weeks and went home. The attending physician testified with some degree of uncertainty that while at the hospital she complained of numbness in the right arm, and she continued to do so after her discharge, the numb feeling extending to her right side generally. She also complained of pains in the head, and there was testimony tending to show that she shambled with her right foot and leg while walking.

Before her injury she did housework for other families, earning from $1.25 to $1.50 per day. Afterwards she again engaged in the same kind of work, but owing to the impair-

ment of the right hand earned only from twenty-five to fifty cents per day.

On December 8, 1901, upon her return from work, she was stricken with paralysis in the right side of her body and lost the use of the right arm and leg. Her power of speech was also impaired. Such was her condition at the time of the trial, and in all probability it will so remain for life. The injury to the wrist is permanent.

It is tacitly conceded and cannot properly be denied that the damages are excessive unless the paralysis is due to the accident. Upon that question four physicians were called by appellee. One testified: " I would say that the fall on the sidewalk, striking on her head, would form a very good cause for the paralysis." Another said: " A very possible cause is the traumatism or the injury." The third testified, when asked what, in his opinion, produced the paralysis: " Well, I think the injury she received; the fall on the sidewalk." The fourth physician was Dr. McGregor, who at the request of appellant, appellee consenting, examined her during the trial. To the question what caused the paralysis, he answered: " Why, I don't know. * * * Of course it might occur from " the fall. " If the paralysis came on from a blow, it would be much more likely to have occurred within a month." Dr. Moyer, called by appellant, thought " it was due to the plugging of a blood vessel," and on cross-examination said: " A blow, violence or injury to the head will produce paralysis." What was the cause of appellee's condition, was pre-eminently a question for the jury, and we cannot say that the damages allowed her are too large, notwithstanding the fact that Drs. McGregor and Moyer are men of much greater experience in their profession than the three other medical witnesses. The verdict is by no means clearly against the evidence.

The jury were instructed that if they found for appellee, then " in assessing her damages they should assess such an amount as they may believe from all the evidence and under the instructions of the court she is entitled to." We are referred to City of Chicago v. Gilfoil, 99 Ill, App. 88,

as condemning a similar instruction on the grounds that the jury should award only such damages as the injured person has sustained, and that in assessing them they should be confined to the evidence bearing on the question of damages. As regards the latter ground, an instruction not confining the jury to the proof of damages was approved by this court in W. C. S. Ry. Co. v. Dougherty, 110 App. 204, for reasons which are the same here as there. See also Chicago v. Davies, 110. App. 427, and C. C. Ry. Co. v. Sheehan, 110 App. 492. While the instruction was objectionable in allowing the jury to award such damages as from the evidence they believed appellee to be entitled to, and not simply such as she has sustained, yet in view of all the circumstances we are inclined to regard the error as harmless and of not sufficient moment to warrant a reversal, reaching in that regard the same conclusion as in the Gilfoil case, *supra*.

The sixth instruction given for appellee is not open to the objections urged against it.

The judgment appealed from is affirmed.

*Affirmed.*